### H. D. Garrison v. The State.

No. 4009.    Decided November 25, 1908.

**1.—Carrying Pistol—Charge of Court—Misdemeanor—Verbal Charge.**

Where upon trial of unlawfully carrying a pistol, no objection was made to the oral charge of the court at the time or during trial, and the objection to the court's verbal charge was made for the first time in the motion for new trial, there was no error.

**2.—Same—Modification of Requested Charge.**

Where upon trial of unlawfully carrying a pistol the defendant requested a charge which the court modified and submitted to the jury, without exception by the defendant at the time, there was no error.

**3.—Same—Weight of Evidence.**

See opinion for requested charge modified by the court which is held not to be on the weight of the evidence.

**4.—Same—Charge of Court—Weight of Evidence—Deflecting from Course of Travel.**

Upon trial of unlawfully carrying a pistol where the evidence showed that defendant purchased the pistol to take home but on his way went into a saloon and engaged in trouble while having the pistol with him, etc., the court's charge that appellant had a right to purchase the pistol and carry it home but that this would not be the case if he diverted his line of travel or stopped by the wayside and engaged in an unlawful act, etc., was not on the weight of the evidence.

Appeal from the Criminal District Court of Harris.    Tried below before the Hon. J. K. P. Gillaspie.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of $100.

The opinion states the case.

*John H. Garrison,* for appellant.—On question of court's charge: Lewis v. State, 2 Texas Crim. App., 26. On question of insufficiency of evidence: Rines v. State, 38 S. W. Rep., 1016; Mangum v. State, 15 Texas Crim. App., 362; Waddell v. State, 37 Texas, 354; Christian v. State, 37 Texas, 475; Lann v. State, 25 Texas Crim. App., 495; West v. State, 21 Texas Crim. App., 427.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of unlawfully carrying a pistol and his punishment assessed at a fine of $100.

Bill of exceptions No. 1 recites that the court gave a verbal charge to the jury, the case being a misdemeanor. Several objections were urged to this, among other things that it was not given with the consent of the defendant, the defendant not waiving his right to have a written charge; that it was upon the weight of the evidence and erroneous in instructing the jury that the defendant would be guilty unless at the time he purchased the pistol he went to his home in a reasonable time and in a direct route. The court qualifies the bill in signing it, as follows: "Filed and approved with the explanation that a written charge was not requested except special charges and no objection made to oral charge." Appellant requested a charge in writing which was given by the court with some modification. Objections were urged to this. The court signs the bill with this explanation: "That no exception was taken during the trial and first mentioned in motion for new trial."

Two other charges were asked by appellant but refused by the court with the explanation that the charges requested were substantially given. There was no error in regard to the court's action in giving the verbal charge as the matter is presented. Article 719 of the Code of Criminal Procedure, is as follows: "In criminal actions for misdemeanor the court is not required to charge the jury, except at the request of the counsel on either side; but when so requested shall give or refuse such charges, with or without modification, as are asked in writing." Article 720, provides: "No verbal charge shall be given in any case whatever, except in cases of misdemeanor, and then only by consent of the parties." Under the decisions, the court in misdemeanor cases, is not required to charge the jury except at the request of counsel and then only to give such charges as are prepared in writing and asked to be given. For collation of authorities see White's Annotated Code of Criminal Procedure, sec. 842. It has further been held by this court in an unbroken line of authorities, it seems, that in a misdemanor case a verbal charge can only be given by consent of the parties, and it is clearly erroneous to give such charge over objection of the defendant. Harkey v. State, 33 Texas Crim. Rep., 100. And this has been extended to the reading of articles of the Penal Code as the charge of the court to the jury, when defendant excepted. Wilson v. State, 15 Texas Crim. App., 150, which overrules Hobbs v. State, 7 Texas Crim. App., 117. It is further held, however, that the objection to a verbal charge given by the court comes too late when made for the first time in the motion for new trial. The exception must be taken at the time the charge is given. Vanwy v. State, 41 Texas, 639; Franklin v. State, 2 Texas Crim. App., 8; Goode v. State, 2 Texas Crim. App., 520; Lawrence v. State, 7 Texas Crim. App., 192. So the

exception to the charge on the ground that it was verbal, under the statement by the court in the bill of exceptions that no objection was made to the oral charge and the further explanation that no exception was taken during the trial and it was only first- mentioned in the motion for a new trial, is not well taken. The charge given and to which the exception was reserved was in writing and given at the request of the accused. This charge is as follows: "The jury is instructed that a person may legally purchase a pistol and transport same to his home or room by the usual traveled route and that a reasonable delay in route would not change the rule (unless unreasonable and for an unlawful purpose), hence if you find from the evidence that the defendant purchased on December 31, 1905, and was taking the same to his home or room by the usual traveled route (and did not unreasonably and did not for an unlawful purpose loiter about the streets or other places, saloons or otherwise) you will find him not guilty, though you may find that he stopped on the road for a reasonable time on legitimate business (and for lawful purpose and intent)." That portion of the quoted instruction included in the brackets was inserted by the court in the charge requested. It was, as before seen in this opinion and as seen by the authorities, not improper for the court to modify the charge as requested. Nor, do we believe there is any sufficient merit in the contention that this charge is upon the weight of the evidence to require a reversal of the case.

It is contended in this connection, also, that there was no evidence that appellant was engaged in an unlawful purpose or had an unlawful intent and that there was no evidence introduced to warrant the court in submitting to the jury that the defendant stopped for an unlawful purpose; that such charge was misleading and was calculated to mislead the jury, in that it was likely to impress upon them that the court believed that in stopping on his way home, appellant was engaged in an unlawful act or seeking to violate some penal law of the State of Texas; that same was calculated to prejudice him before the jury, etc. The evidence introduced by the State shows that appellant was in a saloon on Sunday evening and that one or two witnesses, among them a policeman, were standing on the sidewalk and heard a disturbance in the saloon and went inside and found appellant and another man engaged in a scuffle and were down on the floor. The policeman demanded appellant's pistol and appellant stated the bartender had his pistol and had taken it away from him. The policeman secured the pistol and arrested the appellant. The appellant stated that he lived in Nacogdoches County and that he was on a visit in Houston to Judge Vasmer; that his wife and daughter were accompanying him and that they had been in Houston some days; that he did not own a pistol and never carried one, but that on the occasion in question he went to Sweeny's establishment in Houston and bought a small pistol, that his wife had requested him to buy her

a pistol and that it was for this reason that he purchased the pistol; that as soon as he bought the pistol from Sweeny, he put it in his overcoat pocket; that when he bought the pistol he also bought some cartridges and that Mr. Sweeny loaded the pistol, wrapped it up in a piece of paper and that he then took the pistol and put it in his overcoat pocket and started up the street towards Judge Vasmer's residence where he, his wife and daughter were on a visit; that he stepped into a barbershop for the purpose of getting a shave, took off his overcoat and hung it up while being shaved; that after being shaved he went to a bootblack stand under the same roof and had his shoes shined; that he went through a side door from the barbershop into the saloon, met some friends and they engaged in social drinking, he taking several drinks. That before going into the saloon from the barbershop he put on his overcoat which had the pistol in the pocket; that about the time he got ready to leave, he suggested to take another drink and he would then leave and go home; that about that time one of the crowd put his hand in his, appellant's, pocket and got the pistol; that a scuffle ensued over the pistol, his friend trying to get it and he trying to prevent his getting it; that they got down on the floor in the scuffle and somebody told the bartender to take the pistol away and put it up; that the bartender did so and that at this juncture the policeman entered, took the pistol and arrested him. The policeman testified among other things, in reference to the incident, as follows: "On said day I saw the defendant in Bergamini's saloon on Main street in the City of Houston. I think it was on the last day of December, 1905, that I heard there was a row or pistol play in said saloon. I was outside on the street and some parties came to me and told me there was a row going on in said saloon or a pistol play. I went in the saloon and saw Mr. Garrison, the defendant; he looked like he had been in a scuffle and I says to him, 'give me that gun.' He said he didn't have it; that they had taken it away from him. I asked him who had taken it away from him, and he said the bartender and the porter, and that it was behind the bar. The policeman arrested the appellant and got the pistol. He says, however, he did not see appellant scuffling with anyone over the pistol; that he reached the point of disturbance after the pistol had been taken from appellant. Dexter testified that he saw defendant in the saloon about 3 o'clock Sunday evening and that his attention was attracted in said saloon by a noise or disturbance; that he looked in and saw two men grappling with each other, struggling for the possession of a pistol. This witness rushed into the saloon and told the barkeeper to take the gun away from them and the barkeeper and the porter did take the gun and one of them put it behind the bar; that just about this time the policeman came in, made the arrest and got the pistol. This witness said both the men had hold of the gun when he first observed them, and that his attention was

attracted by the noise of the scuffling; that he thought the men were having a difficulty, though no blows were struck; that it looked like two men were in a fight or a serious difficulty; that the two men were struggling with each other, each having hold of the gun and each trying to get possession of it. Cloud testified that he was in the saloon engaged in a conversation with a man named Speed. This witness was the bartender. He says the first thing that attracted his attention to them particularly was that they were struggling with each other for the possession of a gun; that other men came in and told him to get the pistol away from them; that the porter and he took it away from them and put it behind the bar; that at the time he went to them they both had hold of the gun; that when he uses the term "gun" here, he means pistol. Appellant introduced Mr. Sweeny in support of his purchase theory, who testified that at the request of appellant's counsel, Judge Warner, he examined his salesbook as to the sales made on the 31st day of December, 1905, and the same disclosed the sale of a pistol for the price of $2, but that he could not identify the appellant as the purchaser; that in fact he could not remember the party that far back and said he had no distinct recollection of selling the pistol to appellant. Under this state of case, we are of opinion that the modification of appellant's requested instruction is not upon the weight of the testimony. It did not assume that appellant was engaged in any unlawful act or crime, as we understand it, but submitted to the jury the theory, first, that appellant had the right to purchase the pistol and carry it home, and, second, that this would not be the case if he diverted his line of travel, or stopped by the wayside and engaged in unlawful acts, etc. He did not tell the jury in the statement in the charge that appellant was engaged in any unlawful act, as we construe the charge. It is clear, under our decisions, that appellant would have no right to do as he did,—that is go into the saloon and engage in trouble on Sunday evening, drinking and carousing and having his pistol with him on the occasion, and raising a disturbance. If he did this he excluded himself from the protection of the statute and the court, it occurs to us, was not charging upon the weight of the evidence in instructing the jury that if appellant did these things, he would not be protected by the law which authorizes him to purchase and carry home a pistol.

We are of opinion that there is no sufficient error contained in this record to authorize a reversal of the judgment and it is ordered to be affirmed.

*Affirmed.*

[Motion for rehearing denied.—Reporter.]